1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF KENTUCKY
 2                   SOUTHERN DIVISION AT PIKEVILLE
                                - - -
 3
      UNITED STATES OF AMERICA,      : Docket No. 23-11
 4                                   :
                         Plaintiff,  : Pikeville, Kentucky
 5                                   : Thursday, March 14, 2024
                                     : 10:00 a.m.
 6      v.                           :
                                     :
 7    TIMOTHY D. MORMAN,             :
                                     :
 8                       Defendant.  :

 9                                - - -
                         TRANSCRIPT OF SENTENCING
10                      BEFORE DANNY C. REEVES
             UNITED STATES CHIEF DISTRICT COURT JUDGE
11                                - - -

12    APPEARANCES:

13    For the United States:      ANDREW H. TRIMBLE, ESQ.
                                  U.S. Attorney's Office
14                                601 Meyers Baker Road
                                  Suite 200
15                                London, Kentucky 40741

16    For the Defendant:          PATRICK E. O'NEILL, ESQ.
                                  Turner & O'Neill, LLP
17                                1029 College Avenue
                                  Suite 101
18                                Jackson, Kentucky 41339

19
      Court Reporter:             LAUREN I. GOOTEE, RMR, CRR
20                                Official Court Reporter
                                  101 Barr Street
21                                Lexington, Kentucky 40507
                                  (859) 469-7459
22

23

24
          Proceedings recorded by mechanical stenography,
25    transcript produced by computer.
```

2

| | |
|---|---|
| 1 | (Proceedings commenced in open court at 10:00 a.m.) |
| 2 | THE COURT:  Thank you. |
| 3 | Madam Clerk, would you call the matter scheduled for |
| 4 | 10:00, please. |
| 5 | THE CLERK:  Yes, Your Honor. |
| 6 | Pikeville Criminal Action 23-11, United States of America |
| 7 | versus Timothy Morman.  This matter is called for sentencing, |
| 8 | Your Honor. |
| 9 | THE COURT:  Thank you. |
| 10 | Would counsel state their appearances, please. |
| 11 | Mr. Trimble. |
| 12 | MR. TRIMBLE:  Good morning, Your Honor.  Drew Trimble |
| 13 | on behalf of the United States. |
| 14 | THE COURT:  Mr. O'Neill. |
| 15 | MR. O'NEILL:  Good morning, Your Honor.  Patrick |
| 16 | O'Neill on behalf of Timothy Morman, who's seated to my right. |
| 17 | THE COURT:  Thank you. |
| 18 | This matter is scheduled for sentencing this morning. |
| 19 | Before we proceed with the hearing, let me first confirm |
| 20 | that Mr. Morman has had the opportunity to review his |
| 21 | presentence report and also to discuss the report with counsel |
| 22 | to his satisfaction. |
| 23 | Is that correct, Mr. Morman? |
| 24 | THE DEFENDANT:  That's correct. |
| 25 | THE COURT:  Your presentence report will be filed in |

3

1    the record under seal.  It is available if you should need it

2    for any reason.  However, it's not available for the general

3    public to review.

4        There are no objections to the presentence report, and,

5    therefore, I will adopt the findings contained in the report

6    as well as the guideline calculations, which I will review

7    with the parties in just a moment.

8        Before I do that, I'll remind counsel that if there are

9    any additional factors that you would like to call to my

10   attention that are relevant to sentencing under Title 18

11   Section 3553(a), please do so during allocution in the case.

12       Now, turning to the guideline calculations.  The offense

13   level calculations begin in the report at paragraph 28.  The

14   2023 edition of the guidelines manual has been used.

15       For Count 1, the base offense level is level 24.  There's

16   a three-level reduction shown for acceptance of

17   responsibility.  Before the Court may apply the third level of

18   acceptance credit with respect to this particular count, it

19   does require a motion from the United States.

20       Mr. Trimble.

21       MR. TRIMBLE:  I make that motion at this time,

22   Your Honor.

23       THE COURT:  The motion is sustained.  And that has

24   the effect of reducing the total offense level for Count 1 to

25   level 21.

1      Count 2 is the conviction for possession of a firearm in

2    furtherance of the drug trafficking crime charged in Count 1.

3    By statute, that requires a minimum term of incarceration

4    consecutive to Count 1, the minimum term being five years.

5    And that is set forth in paragraph 39.

6      Information regarding Mr. Morman's criminal history is

7    set out in Part B of the report.  Mr. Morman has a total of

8    four criminal history points based on those convictions that

9    do assess points.  That places him in Criminal History

10    Category III for purposes of calculating the guideline range

11    for Count 1.

12      Based upon a base offense level of 21, Criminal History

13    Category III, the guideline range for that count would be 46

14    to 57 months but for the mandatory minimum term.  And because

15    the minimum term is greater than the guidelines range, that

16    mandatory minimum term becomes the range in the case.  So it's

17    a minimum of 60 months.  That's the guideline range for

18    Count 1.  And then, again, Count 2 would be a minimum of 60

19    months consecutive.  That information is contained in

20    paragraph 105 of the report.

21      For supervised release, Count 1 requires a minimum of

22    four years' supervision.  For Count 2, the term of supervision

23    is not more than five years.  The guidelines range for

24    supervision is set forth in paragraph 109.  For Count 1, four

25    to five years, and for Count 2, two to five years.

5

1    And then with regard to the fine calculation, that is set

2    forth in paragraph 119 of the report.  The bottom of the fine

3    range based upon the total offense level in the case is

4    $15,000, and then the statutory maximum becomes the upper end

5    of the fine range.  That's $5 million.  Again, that is set

6    forth in paragraph 119.

7    Those are the relevant guideline calculations that are

8    adopted in this case.  And, again, the Court has adopted the

9    findings contained in the report.

10   I believe the United States had indicated at the time

11   Mr. Morman entered his guilty plea, it would be moving to

12   dismiss the remaining count, Count 3, at the time of

13   sentencing.

14   Is that still the government's motion?

15          MR. TRIMBLE:  Yes, Your Honor.

16          THE COURT:  That motion will be sustained.  That

17   count will be dismissed effective upon entry of the judgment

18   in this matter.

19   I believe there are no other motions to be taken up, so

20   we'll at this time proceed with allocution.

21   Mr. O'Neill, I'll turn to you first.  And also, if

22   Mr. Morman would like to make a statement to the Court, he may

23   do so as well.

24          MR, O'NEILL:  Thank you.

25   Your Honor, we're asking for the Court to impose the

1    minimum sentence on both counts.  In looking at the 3553(a)

2    factors, we recognize that the nature and circumstances of the

3    offenses are very serious, involving drugs and guns, but

4    looking at the time of the arrest, once he was arrested,

5    Mr. Morman did give a statement to police.

6        In looking at the history and characteristics of the

7    defendant, he indicates that he had a stable childhood, but

8    his biological father was not present.  He was basically

9    raised by his stepfather.  He had a decent relationship with

10   his stepfather.  Of course, we note that there have been drug

11   problems in his family.  He had a brother who was in prison

12   for drugs.  It's not really reflected in the report, but he

13   did have a brother that was murdered, and the funeral was on

14   the night that the search warrant was executed.

15       Mr. Morman has children.  He's estranged with some, but

16   he's trying to reconcile, and he does have a good relationship

17   with one child.

18       Mr. Morman has worked throughout his life.  He does have

19   skills.  He has skills working on vehicles, skills as a

20   carpenter, skills as a bricklayer, and also a salesman.

21       He does have a criminal past, and the criminal history

22   points we believe sufficiently take that into account, and his

23   guideline range has bumped up because of his criminal history

24   category and reflects the significance of his criminal

25   history.

1        Mr. Morman has poor health.  He's been in a serious car

2    wreck previously, and he also suffered a fall.  Both of those

3    resulted in head injuries from which he still suffers.  He has

4    back and neck problems with nerve root impingement, which

5    causes pain pretty much all the time.  And one of the more

6    pressing issues for him right now is his cataracts that need

7    medical attention.  He tried to have them addressed in

8    pretrial custody, but that has not occurred so far.  And he

9    really needs better glasses than he has right now just to try

10    to get through until he can have surgery for his cataracts.

11        He admits that he's used drugs in the past and he admits

12    that he's acted recklessly as a youth, but he is working on

13    trying to get that straightened out.  He admits, like I said,

14    the drug problem and freely admitted that he would benefit

15    from mental health counseling.

16             THE COURT:  I don't believe the presentence report

17    reflects any information on substance abuse.

18             MR, O'NEILL:  It doesn't, other than --

19             THE COURT:  Page 24 doesn't say anything about

20    substance abuse.

21             MR, O'NEILL:  There's a paragraph -- and the number

22    escapes me -- where he indicates that he had -- it was in

23    paragraph 86 -- that he had reckless behavior, citing drug

24    usage, driving too fast, not caring what happened to him and

25    so on.  But there is no drug history section as is often

1  indicated.

2      Looking at the need for the sentence imposed, we think

3  that the minimum on both counts would, you know, be looking at

4  ten years, and ten years is more than sufficient to recognize

5  how serious these offenses are.  Ten years is a very long time

6  to be in custody.  It certainly sends a message to Mr. Morman

7  and to the community that this kind of behavior is not going

8  to be tolerated.

9      During that period of time and a period of time of

10  supervised release, which, incidentally, we're asking for

11  either four or five years and agree that that would be helpful

12  for him, but the sentence in custody and the time on

13  supervised release would be sufficient to protect the

14  community.  It protects the public from Mr. Morman.  When he's

15  released from all this, we're looking at him being in his mid

16  60s, supervised release putting him close to 70.  I just think

17  that that offers the protection that the public needs.

18      He does ask that he be considered for a medical facility

19  to address the medical issues that I've discussed.

20      I believe that he has been found indigent and, therefore,

21  can't afford a fine, and ask that no fine be imposed.

22      So, again, we're asking for a minimum sentence on both

23  counts and the supervised release of either four to five

24  years.

25      Thank you.

9

1          THE COURT:  Thank you, Mr. O'Neill.

2       Mr. Morman, would you like to add anything to what your

3    attorney has said on your behalf?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Thank you.

6       Mr. Trimble.

7          MR. TRIMBLE:  Your Honor, the recommendation of the

8    United States in this case is 60 months on Count 1 followed

9    consecutively by 60 months on Count 2 for a total sentence of

10   120 months followed by five years of supervised release, no

11   fine, and with forfeiture included in the judgment.  That's a

12   similar recommendation to the recommendation of the defendant.

13      I wouldn't agree that that's more than is necessary under

14   the 3553 factors.  It is more than the guideline range of a

15   24/4.  But I think, even excluding the mandatory minimum in

16   this case, there are very serious factors here that I think,

17   even had the mandatory minimum not applied, this is a case

18   where Mr. Morman would have been looking at the top or

19   slightly above that guideline range based on his history and

20   characteristics and the nature and circumstances of this

21   offense.

22      He has several serious offenses that were not even scored

23   in the criminal history category, two trafficking offenses

24   that by my count --

25          THE COURT:  So you believe that perhaps his criminal

1    history may be understated in this case --

2         MR. TRIMBLE:  I think the criminal history --

3         THE COURT:  -- perhaps under his history and

4    characteristics?

5         MR. TRIMBLE:  I think there's certainly an argument

6    to that, yes.  And I think I would -- had the mandatory

7    minimum not applied, I would have used under 3553 -- even

8    though properly scored under the guidelines, would have used

9    that as a basis to aggravate within the guideline range.

10        But you have a burglary second, burglary third, and two

11   trafficking offenses that weren't counted in his criminal

12   history.  They're old.  They're properly not counted.  But by

13   my count, it was about six months that he missed the

14   traffickings from counting in his history, which could have

15   dramatically changed the circumstances that he was looking at.

16   And that may just be a function of me not being able to prove

17   far enough back when his criminal conduct in this case

18   extended.

19        Then you have -- as far as counting offenses, the primary

20   weight is derived from a very serious offense.  Though it has

21   some age on it, it is a very serious offense that continued on

22   into the present through several violations.  And violative

23   conduct really permeates Mr. Morman's criminal history and

24   justifies the five-year period of supervised release in his

25   case.

1        By my count of the date range, it was only about a year

2    after the expiration of that very serious sentence that the

3    search in this particular case occurs.  And his reaction is

4    not what you would want in terms of nature and circumstances

5    of the offense.

6        The law enforcement approaches.  He doesn't let them in.

7    He runs back through the house.  He discards some of the

8    evidence, not far, but outside in the yard, to try to avoid

9    that being found.  And law enforcement does find it.  And what

10   they find is a dangerous cocktail of polysubstance drug

11   possession, an aggravated quantity of methamphetamine, 10

12   grams of fentanyl, which is substantial, 20 grams of cocaine,

13   marijuana that was present, as well as multiple firearms,

14   including at least one of which that was loaded.

15       That's serious conduct.  It's significant drug possession

16   and drug trafficking, and it's added danger with the

17   possession of the firearm in the context of that.

18       Even if that alone was all of Mr. Morman's conduct, it

19   would be significant, but you add to it the significant

20   conduct that occurs when he's actually being arrested on his

21   federal warrant where he flees from law enforcement.  I can't

22   prove that he had a knife, I can't prove that one was ever

23   recovered, but certainly the law enforcement officers felt as

24   though there was an aggressive movement by him in the course

25   of his flight.  He resisted arrest in the course of that.  And

1    I think that is -- that's serious conduct.

2         And those things, his reaction on the search warrant, his

3    long criminal history, his repeated instances of probation

4    violation, and his conduct on arrest really show a glaring

5    need to promote respect for the law, to protect the public

6    from Mr. Morman, and I think those are important

7    considerations, as well as the need to provide just punishment

8    and to deter future conduct by Mr. Morman.

9         So it's the recommendation of the United States in this

10   case that he be sentenced to a total sentence of 120 months

11   followed by five years of supervised release and no fine.

12        It's the position of the United States that even though

13   it is an imposition of the mandatory minimum that it is not

14   overly burdensome, it's not overly harsh, I guess is the word

15   I'm looking for, because of the significance of his criminal

16   history and his conduct in this case.

17        THE COURT:  And what's the position of the government

18   with regard to any potential fine under 5E1.2, subparagraph

19   (d)?

20        MR. TRIMBLE:  We're not requesting a fine.  He hasn't

21   worked since 2021 and didn't have really any income, aside

22   from that truck, any assets.  He only has had $600 into his

23   commissary account.  It does appear that he is indigent.  It

24   doesn't appear that he has a basis to pay a fine in this case,

25   and so we're not requesting one based on that.

1          THE COURT:   Thank you.

2          Mr. Morman, in this case, I do begin the analysis of an

3     appropriate sentence by looking at the properly calculated

4     guideline range in the case, and, as indicated earlier, the

5     guideline range for Count 1 is 60 months.  Because it's a

6     mandatory minimum term, it's above what the guideline range

7     otherwise would be.  Then there's a 60-month consecutive

8     sentence for possessing a firearm in furtherance of the drug

9     trafficking crimes.

10         I also consider those factors of Title 18 Section 3553

11    that I referenced at the time that you entered your guilty

12    plea in this case, and they do include, of course, the nature

13    and the circumstances of the offense as well as the history.

14    With your history and your characteristics, I consider the

15    need for the sentence to reflect the seriousness of the

16    offense, the need to promote respect for the law and provide a

17    just punishment.

18         Then I also consider issues of deterrence, which is

19    twofold, both general deterrence, in other words, the need to

20    deter others from engaging in similar conduct, as well as

21    specific deterrence.

22         I also consider issues of rehabilitation, such as your

23    medical issues, potential substance abuse issues.  And I

24    consider the need to avoid unwarranted sentencing disparities

25    among defendants with similar records who have been found

1    guilty of similar conduct.

2        So when I consider all of that information, all those

3    factors, it's my determination that a sentence above the

4    guideline range on Count 1 is appropriate and it will be

5    imposed in the case.  And I have determined to go above the

6    60-month guideline range by an additional 36 months for a

7    total of 96 months for Count 1 to be followed by 60 months for

8    Count 2 to produce a total term of 156 months.

9        Let me tell you how I get to that point.

10       First, when we look at the nature and the circumstances

11   of the offense, I do look at information in the presentence

12   report, the number of substances that you had available for

13   sale.  While the United States indicates you didn't have any

14   income for some period of time, that should be tempered by

15   legitimate income.

16       We look at paragraph 8, for example, when you indicated

17   to this potential purchaser that you had anything and

18   everything that he wanted.  Then we look at the activity that

19   occurred at the time of this initial search, attempting to

20   flee, requiring forced entry into your residence, the

21   substances that were located there.  And then subsequent

22   activity reflected in paragraph 17, that you made statements

23   that if police had attempted to arrest you, you had weapons

24   and law enforcement would have had a difficult time placing

25   you into custody.  And then your actions reflected in

paragraph 18, fleeing from the marshal service when the arrest
was attempted.

So all this information is very serious, your activities
are serious, the drugs that you were selling were serious,
then having firearms compounds the problem.  So when we look
at the nature and circumstances of the offense, it's my
determination that the guideline range would not adequately
take into account those activities.  Then I look at your
history and characteristics and draw a similar conclusion,
that the guideline range would not be sufficient.

I believe you have probably 14 convictions since the age
of 18.  Only two of those are counted for criminal history
points.  That's because of the age and the nature of the
offenses.  But when we look back at when your offenses
started, at age 18 as reflected in paragraph 43, relatively
not a very serious offense, but then we go to age 19, burglary
second; age 20, burglary third; age 20, theft by unlawful
taking; and then age 29, trafficking in a controlled
substance, cocaine; then again at age 29, another trafficking
in controlled substances; age 30, receiving stolen property;
age 33, driving under the influence; another driving offense
at age 33; possession of marijuana at age 33.  And these don't
count for any criminal history points.

So there's a pattern of criminal conduct that's shown in
Part B of the report.

1          And then, although not referenced by counsel

2     specifically, as reflected in paragraph 54, convictions for

3     sodomy second degree, rape second degree involving a minor

4     under the age of 14 when you were 36 years old, and then the

5     description of that conduct that follows.  So you did receive

6     three criminal history points for that offense, but then you

7     have another traffic offense and then a shoplifting offense

8     shown in paragraph 56.

9          So when the Court looks at this, I could evaluate this

10    under Chapter 4, being an inadequate criminal history, but

11    instead the Court looks at this as a factor of 3553 as part of

12    your history and characteristics.  And in assessing whether

13    you're likely to commit other offenses when released and the

14    nature of those offenses, whether they would be dangerous to

15    others, the answer is, yes, that's likely to happen and you

16    are likely to continue to be a danger going forward,

17    notwithstanding your medical issues or the fact that you will

18    be older when released.

19         I am certainly mindful of information from the Sentencing

20    Commission that does indicate that as individuals do become

21    older, there's a reduced risk of recidivism, but the

22    information in Part B convinces me that that statistical

23    information may not apply in your case, and so I do conclude

24    that your history and your individual characteristics support

25    a higher sentence than the guideline range would indicate.

1    I certainly consider the information that your attorney

2  has provided regarding your upbringing, information regarding

3  your family.  But if not mistaken, I believe you may be

4  estranged from one of your children, because the presentence

5  report indicates that while you were incarcerated that your

6  son actually burglarized your home.  So hopefully you can mend

7  fences with your family.  But that may be an indication that

8  maybe the apple doesn't fall too far from the tree as well.

9    You do have some work history, ability to work.  But

10  while you're able to work, you also have those series of

11  theft-related offenses in the criminal history section.

12    With regard to your health conditions, I do believe that

13  the Bureau of Prisons can certainly address those conditions,

14  those mentioned both by counsel as well as outlined in the

15  presentence report, both as a result of the accident that your

16  attorney referenced as well as cataract issues.

17    Now, with regard to drug use, there is some indication of

18  substance sale and some indication of substance use as

19  reflected by counsel, I believe, in paragraph 86, but it's not

20  sufficient for the Court to conclude that it should recommend

21  the RDAP program here, and the Bureau of Prisons is able to

22  provide substance abuse treatment during the period of

23  incarceration.  The Court can also address those issues as

24  part of supervised release following any period of

25  incarceration.

1          So on balance, the Court concludes that the minimum term

2     required by the statute is insufficient and, therefore, it's

3     my determination that a variance upward is appropriate under

4     3553(a)(1) based upon the nature and circumstances of the

5     offense as well as your history and characteristics,

6     3553(a)(2)(A), the seriousness of the offense, the need to

7     promote respect for the law and provide just punishment, as

8     well as 3553(a)(2)(B) for deterrence, both general deterrence

9     to others as well as specific deterrence.  And in doing so,

10    the Court will also provide a measure of protection to the

11    public going forward.

12         So I do conclude that for those reasons, a variance

13    upwards of 36 months on Count 1 is necessary and appropriate

14    in this particular case and it would not be greater than

15    necessary to meet all the purposes of Title 18 Section 3553.

16         I do agree with counsel that it's not necessary to impose

17    a fine in the case under 5E1.2, subsection (d).  I do believe

18    the period of incarceration will be sufficient to account for

19    all of the factors.

20         With regard to a term of supervised release, I do believe

21    that a five-year period of supervision is necessary both to

22    avoid any future violations of the law, but also to provide

23    you with necessary rehabilitation, which I believe will be

24    appropriate following the period of incarceration.

25         So I'll announce the sentence at this time.

1    It will be the sentence of the Court, pursuant to the

2    Sentencing Reform Act of 1984, as modified by the decisions in

3    *Booker and Fanfan*, I find the following sentence to be

4    sufficient, but not greater than necessary, to meet all of the

5    purposes of Title 18 Section 3553(a).  Therefore, it will be

6    the judgment of the Court that the defendant, Timothy D.

7    Morman, will be committed to the custody of the Bureau of

8    Prisons for a term of 96 months on Count 1, 60 months on

9    Count 2 to be served consecutively to produce a total term of

10   156 months' incarceration.

11   I will recommend to the Bureau of Prisons that you

12   receive a medical evaluation and any necessary treatment, but

13   the Court will not be making a specific recommendation with

14   regard to substance abuse treatment.

15   Upon release, you will be placed upon supervision for a

16   term of five years on each of Counts 1 and 2 to be served

17   concurrently.  That will produce a total term of five years.

18   And within 72 hours of release from the custody of the Bureau

19   of Prisons, you must report in person to the probation office

20   in the district in which you are released.

21   While on supervision, you may not commit another federal,

22   state, or local crime, and you must comply with the mandatory

23   and the standard conditions adopted by the Court and that will

24   be set forth in the judgment and commitment order.

25   I'll also include the following special conditions which

1    I do believe are necessary in this particular case:

2          First, you must abstain from the use of alcohol.

3          Next, you may not use or consume marijuana or marijuana

4    products even if those substances were prescribed to you by a

5    physician, licensed professional, or other person, and even if

6    the substances were to be legal in the jurisdiction in which

7    you're located.

8          You're also required to participate in a substance abuse

9    treatment program and any mental health treatment program that

10   may be required at the direction and discretion of the

11   probation office, and you're required to follow the rules and

12   regulations of any program in which you are enrolled.

13         You're required to attend sessions, and you must pay all

14   or a portion of the cost of treatment services pursuant to

15   General Order 22-09, which does establish a sliding scale for

16   payment based upon a person's ability to pay.  And the

17   probation office will be responsible for supervising your

18   participation in the program.

19         You're also required to participate in urinalysis testing

20   or any other form of substance abuse testing as directed by

21   the probation office.  You must refrain from obstructing or

22   attempting to obstruct or tamper in any fashion with the

23   efficiency and accuracy of any substance abuse testing

24   required as a condition of supervision.  And you may not

25   knowingly use or consume any substance that interferes with

1    the accuracy of substance abuse testing.

2         I also believe it's necessary to impose a search

3    condition in this case based upon the nature of the offenses

4    and the presence of firearms.

5         You will be required to submit your person as well as any

6    offices, properties, homes, residences, vehicles, storage

7    units, papers, computers, other electronic devices, cloud

8    storage locations, and data storage locations to a search

9    conducted by the United States Probation Office.  A failure to

10   submit to a search would be grounds for revocation of

11   supervision.  And you must warn all occupants that the

12   premises is subject to a search according to this condition.

13        Based upon your current financial situation, as indicated

14   earlier, I will waive the fine requirement in the case, but

15   you will be ordered to pay to the United States a special

16   assessment of $100 for each count of conviction, for a total

17   of $200.  That will be due immediately.

18        And you'll also be required to forfeit any interest in

19   the items listed in the forfeiture allegation of the

20   indictment, which includes a Ruger LCP II, .380 caliber pistol

21   with Serial Number 380503242, a Marlin Glenfield, Model 60 .22

22   caliber long rifle with Serial Number 23613885, a Daewoo .9

23   millimeter caliber pistol with Serial Number 03314, a

24   Churchill 12-gauge shotgun with Serial Number 20054509, a

25   Browning Medallion .22 caliber rifle with Serial Number

1    6O36ONW3M7, and an Allen & Wheelock revolver with no serial

2    number, as well as all ammunition, magazines, and accessories

3    that have been seized.

4          You'll also be required to forfeit the sum of currency in

5    the amount of $1,400.

6          And then following this proceeding, you'll be remanded

7    back to the custody of the United States Marshal pending

8    designation for service of your sentence by the Bureau of

9    Prisons.

10          I believe in the plea agreement Mr. Morman waived the

11    right to appeal the guilty plea and conviction but reserved

12    the right to appeal the sentence.  In just a moment, I will

13    ask the clerk to advise him of that appellate right with

14    respect to the sentence.

15          However, before I do that, I'll ask counsel to state any

16    objections that they may have, first, to the sentence that has

17    been announced by the Court, which would include conditions of

18    supervision.  Second would be any objections under United

19    States versus *Bostic*.  Under that decision from the Sixth

20    Circuit, any objections not previously raised should be raised

21    at this time so that they may be addressed by the Court to be

22    properly preserved for review on appeal.

23          And, finally, if either party would like the Court to

24    make additional findings to support any of the determinations

25    that have been announced, including the Court's determination

1    as to a variance, I'd be happy to make further findings if

2    requested to do so.

3        Mr. Trimble, I'll begin with you an behalf of the United

4    States with any objections or requests for further findings.

5            MR. TRIMBLE:  No objections or requests for further

6    findings, Your Honor.

7            THE COURT:  Thank you.

8        And Mr. O'Neill.

9            MR, O'NEILL:  Likewise, Your Honor, no objections and

10   no requests for additional findings.

11           THE COURT:  Madam Clerk, if you would please advise

12   Mr. Morman at this time of his appellate rights.

13           THE CLERK:  Yes, Your Honor.

14       (The form entitled "Court's Advice of Right to Appeal"

15   was read aloud in open court by the clerk.)

16           THE COURT:  Thank you.

17       Mr. O'Neill, if you would please review that

18   acknowledgment of rights with Mr. Morman.  I'd ask that he

19   sign that document after he has assured himself he understands

20   it.

21           And I'll again note for the record, the information given

22   regarding an appeal relates to the sentence that the Court has

23   announced in the case, the defendant having waived the right

24   to appeal the guilty plea and conviction.

25           Are there any other issues to take up in the case at this

24

1   time?

2           MR. TRIMBLE:  No, Your Honor.

3           MR, O'NEILL:  No, Your Honor.

4           THE COURT:  Mr. Trimble, are you handling the 11:00

5   matter?

6           MR. TRIMBLE:  I think I have the 2:00 and the 3:00.

7           THE COURT:  All right.  We have another hearing at

8   11:00.  I wasn't sure if you were handling all those matters

9   today.

10      We'll be in recess until 11:00 this morning.

11          (Proceedings concluded at 10:34 a.m.)

12                            - - -

13

14              C E R T I F I C A T E

15          I, LAUREN I. GOOTEE, RMR, CRR, certify that the
    foregoing is a correct transcript from the record of
16  proceedings in the above-entitled case.

17

18   _/s/ Lauren I. Gootee_____    May 7, 2024_____
     LAUREN I. GOOTEE, RMR, CRR          Date of Certification
19   Official Court Reporter

20

21

22

23

24

25